## NORTHINGTON–MUNGER–PRATT COMPANY *v.* FARMERS GIN AND WAREHOUSE COMPANY.

1. One may contract to convey property in the future conditionally upon his being able to acquire title thereto.
2. If he contracts absolutely to convey property not then owned by him, he will be liable in damages for a breach, even if he is not able to secure the same so as to make delivery.
3. A written offer of $1,000 for a described gin outfit and " to pay for same upon the other party giving possession and a good title," when duly accepted,

is an absolute contract of bargain and sale, and not conditional upon the vendor being able to acquire title so as to make delivery.

4. Under such contract the purchaser was bound to pay, if within a reasonable time the vendor delivered the property and tendered good title thereto.

5. The seller was bound within a reasonable time to tender such title and make delivery.

6. If the impossibility of making title would prevent a decree for specific performance, it would not prevent the vendee from recovering damages for a breach.

7. If the vendor sold to a third person and thereby disabled itself to convey according to the terms of the contract, it would be liable in damages.

8. The pleading, correspondence, and evidence established the agency and terms of the sale. The evidence sustained the verdict as to the quantum of damages, and there was no error in refusing a new trial.

Argued March 11, — Decided March 30, 1904.

Action for breach of contract. Before Judge Lumpkin. Fulton superior court. July 25, 1904.

The Northington–Munger–Pratt Company sold a cotton-gin outfit to Freeman & Williamson for $1,500 payable in installments, retaining title until the purchase-money was paid. The first note fell due, and after the default had continued for about a month, the company instructed Baker, their agent, to get possession of the outfit and sell. He notified Bates, president of the Farmers Gin & Warehouse Company, of the default, and that he had to retake the gin, and thereupon negotiated for a sale of the gin plant to the Farmers Company. It offered $1,000. The offer was reported by wire to the Northington Company, which instructed Baker forthwith to accept it. The terms of the contract were reduced to writing by which Bates as president offered " $1,000 for the gin outfit including the house located at Rover, and will pay for same upon the Northington Company giving possession and a good title to the same." This offer was marked " accepted " and signed by Baker for the Northington Company. Soon thereafter Baker demanded possession of the gin from Freeman and Williamson, who declined to surrender it, explaining that one of the members of the firm was willing to pay his proportion of the purchase-price, while the other was not. After further negotiations Freeman, for $1,250, took a transfer of the purchase-money notes and took or retained the gin. Baker and the Northington Company reported these facts, and the refusal of Freeman & Williamson to deliver, in explanation of their failure and refusal

to comply with the contract with the Farmers Company, and insisted that the sale was not absolute, but conditional on the Northington Company obtaining possession from Freeman & Williamson, and being able to make good title. The Farmers Company brought suit for damages. The judge charged the jury that there was a contract between the plaintiff and the defendant and a breach of it by the defendant, and that the plaintiff was entitled to recover damages of the defendant; and thereupon gave instructions as to the measure of damages. The jury found for the plaintiff $750, and the defendant excepted to the refusal of a new trial.

*C. J. Lester* and *W. W. Lambdin,* for plaintiff in error.
*Thomas F. Corrigan* and *James L. Mayson,* contra.

LAMAR, J.    There was no plea of the statue of frauds, and the pleadings of the defendant, as well as the correspondence, written contract, and undisputed evidence leave no room to question the making of the contract on the terms stated or the authority of the agent to sell.    The offer and acceptance made a complete contract, the obligation of each furnishing a sufficient consideration for that of the other.    Civil Code, § 3661.    The defendant insists that, construed in the light of the circumstances when the contract was made, it appears that the acceptance was with full knowledge by the buyer that the vendor was not in possession of the gin, and that it would be obliged to secure the property before it could comply.    One can not make good title to that which he does not own.    But that does not prevent him from contracting to convey property to be acquired by him in the future.    He may make the obligation conditional upon his being able to acquire title from some one else (Lacy *v.* Hall, 37 Pa. St. 360 ; *Forsyth* v. *Castlen,* 112 *Ga.* 199 ; Civil Code, § 3537) ; but if he contracts absolutely, he will be bound by the terms of his agreement.    And even if because of the want of title a decree for specific performance could not be rendered, this would not deprive the purchaser of his right to damages for the breach.    Here the contract was not conditional.    The offer to buy and the acceptance were absolute.    The only uncertainty was as to the time when the payment should be made.    That, instead of being fixed by the date of the month, was postponed until the vendor made a good title and delivered possession.    The Farmers Company was bound to pay $1,000 for the

gin outfit, if within a reasonable time the seller tendered a good title and made delivery.   On the other hand, the Northington Company was bound within a reasonable time to tender such title and surrender possession.   If a destruction of the property sold, or other fact, had operated to release the vendor from its liability under the contract, it is elementary that the Northington Company could not sell the gin to Freeman, and claim that it had become impossible to comply with its agreement.   It could not disable itself, and then take advantage of its own wrong when sued for the consequent breach.   Civil Code, § 3725 ; Pomeroy on Contracts, Specific Per. (2d ed.) § 475.   There was evidence to sustain the verdict as to the amount of the damages.

*Judgment affirmed.   All the Justices concur.*